# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| TANNEH ANGELA GUEH, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:15-cv-00386-MTT-CHW |
| | : | |
| Officer ASTI GREEN, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |

## REPORT & RECOMMENDATION

Plaintiff Tanneh Gueh filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 on September 28, 2015, alleging that Defendant Officer Asti Green used excessive force against her on September 6, 2013. Doc. 1, p. 4. Defendant's Motion to Dismiss (Doc. 33) was denied and Defendant has now filed a Motion for Summary Judgment (Doc. 45). Defendant contends that there are no genuine issues of material fact, that she is entitled to qualified immunity, and that Plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act ("PLRA").

## FACTUAL ALLEGATIONS

In support of her Complaint, Plaintiff relies on her pleadings, statement of facts, and testimony during her deposition. In support of her Motion for Summary Judgment, Defendant relies on her declaration, Plaintiff's deposition, Plaintiff's disciplinary report, the declaration of Sandra Martin, and Defendant's statement of material facts.[1] On a defendant's motion for

---

[1] Defendant contends that Plaintiff has failed to submit a statement of material facts. Doc. 47, pp. 1-2. Due to this failure, Defendant contends that the Court should deem Defendant's statement of facts as undisputed. Plaintiff did submit a statement of facts and numbered the sections that corresponded with Defendant's statements. Doc. 46, pp. 10-11, 28-29. Along with these numbered sections, Plaintiff identified whether she agreed or disagreed with Defendant's version of the facts. *Id.* Where Plaintiff disagreed, Plaintiff explained why she disagreed. *Id.* Accordingly, and because Courts liberally construe *pro se* filings, Plaintiff has provided a sufficient statement of

summary judgment, the Court must construe the evidence and draw all inferences in the light most favorable to Plaintiff. *Anderson v. Liberty Lobb, Inc*. 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 – 59 (1970)).

In her deposition, Plaintiff stated that on the morning of September 3, 2013, she was standing in the sally port in front of the door to cell E8A, talking to one of her fellow inmates, Ms. Evelyn Fields. Pl's Depo pp. 50-51.[2] Several inmates were present and witnessed the incident. *Id.* at 54-57. As Plaintiff was talking to Ms. Fields, she saw Defendant Green in the "officer bubble" mouthing something to her, but Plaintiff could not understand what Defendant was saying. *Id.* at 61-64. Plaintiff testified that Defendant then exited the officer bubble, grabbed Plaintiff by the neck, and told her to get out of the doorway. *Id.* at 62-64. Defendant, in her declaration, contends that she never touched or physically assaulted Plaintiff. Def's Dec.. 45-4, p. 2.

Once Defendant grabbed Plaintiff by Plaintiff's uniform shirt, Plaintiff asked Defendant to take her hands off of Plaintiff. Pl's Depo p. 62. Plaintiff testified that "[Defendant,] you don't have to grab me and choke me. You can tell me this without putting your hands on me." *Id.* Defendant let go of Plaintiff's shirt but then "put her bare hands around my neck, choking me.*" Id.* The choking continued for two or three seconds, and Plaintiff testified that Defendant's grip was so tight that she could not breathe. *Id*. When Defendant let go of Plaintiff, she returned to the officer bubble, came out with a broom, and hit Plaintiff's side three times with the broom. *Id.* at 63-67.

---

facts. *See Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998); McCloud v. HSBC Bank USA, NA, 618 F. App'x 660, 661 (11th Cir. 2015)

[2] Plaintiff's deposition is found at Docket No. 45-3.

After Defendant hit Plaintiff with the broom, Plaintiff grabbed the broom out of Defendants hand. *Id*. at 67-68. Plaintiff testified that she told Defendant, "[d]o not hit me again. I asked you three times not to touch me, and you repeatedly assaulted me three times. Please do not put your hands on me again." *Id.* at 68. Defendant then yanked the broom back from Plaintiff and said, "I don't care about that." *Id*. Plaintiff informed Defendant that there were other protocols and procedures Defendant could have used to get Plaintiff out of the doorway, rather than assaulting Plaintiff. *Id*. Plaintiff also told Defendant that if Defendant put her hands on Plaintiff again that she was "going to have to self-defend myself because I've asked you to not to put your hands on me." *Id.* at 78.

Following the incident, Plaintiff was sent to the medical unit by one of the staff members. *Id.* at 81. Plaintiff was seen by a nurse practitioner and complained of pain in her side, back, and neck. *Id.* at 82-83. The nurse practitioner noticed that Plaintiff had swelling and redness on her back, side, and neck, but Plaintiff did not have any broken bones, lacerations, or need for stitches. *Id.*at 85, 87-88. The nurse practitioner prescribed Plaintiff Tylenol for the pain and swelling and instructed Plaintiff to use "hot and cold compress to keep the swelling down." *Id.* at 86. The nurse also referred Plaintiff to Dr. Nazaire "just for protocol." *Id.* at 92. Plaintiff complained to Dr. Nazaire about the pain in her back, side, and neck. *Id.* Dr. Nazaire noticed swelling and redness on Plaintiff and ordered that an x-ray and MRI be conducted. *Id.* at 93.

Plaintiff was transferred from PSP to Lee Arrendale State Prison ("ASP") a couple of weeks after her visit with Dr. Nazaire. *Id.* at 94-95. Plaintiff testified that she was seen by Dr. Walker of ASP and that she had an x-ray and MRI while at ASP. *Id.* at 96-97. Plaintiff stated that she had "nothing broken, but I know that I had—you know, still had pain from the situation." *Id.*at 96. Plaintiff also testified that she has "mild scoliosis of my spine from the situation [with

3

Defendant,]" and that she "never had mild scoliosis before [the incident with Defendant]." *Id.* at 96, 98.

In addition to the pain, Plaintiff was still experiencing some swelling. *Id.* at 97-98. Dr. Walker prescribed Plaintiff "Elavil, which was for major pain and swelling, and it also helped with sleep." *Id.* at 97-98. Dr. Walker also referred Plaintiff to the mental health department at ASP. *Id.* at 98-100. Plaintiff testified that she now "fear[s] blue because I was assaulted at [PSP] [. . . .] They seen the signs in me of the depression[. . . .]I had PTSD from the situation that took place." *Id.* at 101.

## **SUMMARY JUDGEMENT STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, however, "the mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."*Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quoting *City of Delray Beach v. Agricultural Ins. Co.,* 85 F.3d 1527, 1530 (11th Cir. 1996).

There must be a conflict in substantial evidence to pose a jury question. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Verbraeken v. Westinghouse Elec. Corp*., 881 F.2d 1041, 1045 (11th Cir. 1989). This standard "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson*, 263 F.3d at 1243 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See id*. (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)).

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011). However, "unsworn statements, even from pro se parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray,* 279 F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980)).

## DISCUSSION

### A. Excessive Force Claim

There are genuine issues of material fact as to whether Defendant's force was excessive in violation of Plaintiff's Eighth Amendment rights. Excessive force claims brought pursuant to 28 U.S.C. § 1983 are not governed by a single standard; instead the analysis begins by "identify[ing] the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner*, 490 U.S. 386, 394 (1989) (citing *Baker v. McCollan*, 443 U.S.

137, 140 (1979)). Usually, the analysis will focus on Fourth Amendment proscriptions against unreasonable seizures or the Eighth Amendment's proscription against cruel and unusual punishment. *Id*. Claims of excessive force in the context of those incarcerated following conviction are analyzed under Eighth Amendment standards. *Whitley v. Albers*, 475 U.S. 312, 318-25 (1986).

Eighth Amendment excessive force claims have both an objective and subjective component, and Plaintiff has the burden of establishing both. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). To satisfy the subjective prong, Plaintiff must demonstrate that the Defendant acted with a malicious and sadistic purpose to inflict harm. *Id*. To satisfy the objective prong, the plaintiff must show that "the alleged wrongdoing [was] 'objectively harmful' enough to establish a constitutional violation." *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). However, the key inquiry for excessive force claims arising out of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (quoting *Hudson*, 503 U.S. at 7). When the use of force is malicious or sadistic, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id*. (quoting *Hudson*, 503 U.S. at 9).

The Eleventh Circuit recognizes a variety of factors when determining the legitimacy of the use of force in a custodial setting. The factors include "(1) the need for the application of force, (2) the relationship between need and the amount of forced used, (3) the extent of the prisoner's injuries, (4) the threat reasonably perceived by the officials on the basis of facts known to them, and (5) efforts made to temper the severity of the force. *Tate v. Rockford*, 497 F. App'x 921, 923 (11th Cir. 2012) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). These factors determine whether "the use of force could plausibly have been thought

6

necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to knowing willingness that it occur." *Skrtich v. Thorton,* 280 F.3d 1295, 1299 (11th Cir. 2002) (quoting *Whitley*, 475 U.S. at 321).

In the present case, there is an underlying genuine issue of material fact regarding the entire incident. Plaintiff has testified that Defendant grabbed, choked, and hit her three times with a broom stick. Pl's Depo pp. 61-67. In her declaration, Defendant stated that she "did not assault or touch [Plaintiff] on the Incident Date or any other occasion. Nor did I have any verbal disagreement or altercation with [Plaintiff] on the Incident Date or on any other occasion." Def. Dec.. 45-4, p. 2. There are no other records or pieces of evidence besides these directly contradicting testimonies. As such, there is a genuine issue of a material fact as to whether Defendant used *any* force against Plaintiff on the alleged incident date.

Defendant contends that even if the Defendant did exercise the alleged force, a reasonable jury could not find that the force was applied maliciously and sadistically. Doc. 45-1, p. 6. In evaluating the factors laid out above, however, a reasonable jury could find the force was applied maliciously and sadistically. Regarding the first factor, there is a genuine issue as to whether there was a need for the application of force. It is undisputed that Defendant was saying something to Plaintiff from inside the officer bubble but that Plaintiff did not understand what Defendant was saying. Doc. 45-32, p. 2; Doc. 46, p. 28; Pl's Depo, pp. 61-64. Defendant contends that Plaintiff was engaging in threatening and insubordinate behavior and that the prison has an interest in maintaining order and safety. Doc. 45-1, p. 6.

Conversely, Plaintiff testified that she did not know Defendant was giving her an order until Defendant exited the officer bubble, grabbed and choked her, and told her to get out of the doorway. Pl's Depo pp. 61-64. Plaintiff also testified that she made the comments about using

7

self-defense against Defendant after Defendant had already choked her and hit her with a broom three times. *Id.* at 67-68, 78. While prisons have an interest in maintain order and safety (*see Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987)), there is a dispute as to whether Plaintiff was insubordinate and threatening *before* Defendant applied the alleged force. Accordingly, there is a genuine dispute as to whether there was a need for the application of force before the incident occurred.

A reasonable jury might also find Defendant's amount of force was not proportional. Defendant contends that the relationship between the need for force and the amount of force was proportionate because Plaintiff was causing a disturbance. Doc. 45-1, p. 7. Plaintiff testified that after Defendant choked her, Defendant went to the officer bubble, got a broom, and hit Plaintiff on the side three times. Pl's Depo p. 62-63. Order and safety are primary concerns in prisons, and reasonable force is acceptable to obtain order. Here, however, there is a genuine issue of material fact as to whether Defendant's use of a broom stick to hit Plaintiff three times was proportional to obtain that order. Pl's Depo, pp. 63-67; *see Couch v. Britton*, No. 515CV00026MTTCHW, 2016 WL 2991094, at *4 (M.D. Ga. Apr. 8, 2016), *report and recommendation adopted as modified*, No. 5:15-CV-26 (MTT), 2016 WL 2993175 (M.D. Ga. May 23, 2016). A reasonable jury could view the allegation that Defendant left Plaintiff to retrieve a broom, which Defendant then used to hit Plaintiff, as evidence of a malicious act. There is no evidence in the record that Defendant instructed Plaintiff to get out of the doorway, or gave Plaintiff time to comply with any instructions, *before* Defendant struck Plaintiff with the broom. Accordingly, there is an issue of fact as to whether the force applied was disproportionate to the alleged need.

The evidence, construed in the light most favorable to Plaintiff, would show that

Defendant made some efforts to temper the alleged force. In her deposition, Plaintiff admitted that Plaintiff was sent to the medical by one of the prison staff members following the incident. Pl's Depo, p. 81. Allowing an inmate to receive prompt medical treatment generally demonstrates that the alleged conduct was not malicious or sadistic. *Johnson v. Moody*, 206 F. App'x 880, 884 (11th Cir. 2006). The fact that Plaintiff went directly to medical, which Defendant contends is not disputed (Doc. 45-2, p. 3), supports Plaintiff's underlying testimony that Defendant used force against her.[3] Ultimately, this factor may support Plaintiff's claim that a use of force actually occurred.

There is sufficient evidence to create an issue of fact as to whether there was an actual threat and as to whether Defendant reasonably perceived a threat. In her declaration, Defendant stated that she:

> was familiar with [Plaintiff's] disciplinary history since well before the Incident Date. In particular, prior to the Incident Date, I was aware that [Plaintiff] had incurred several disciplinary reports ("DRs"), including DRs for inciting and encouraging fights between inmates, insubordination, assault, and disobedience.

Def's Decl. 45-4, p. 2. Furthermore, refusal by an inmate to follow the order of a prison official may create a threat for the staff and inmates. *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Considering these concerns, this factor, as applied, would generally weigh in favor of Defendant's use of force. There remains a dispute, however, as to whether there was an initial threat Defendant could perceive to warrant Defendant's use of force.[4] Given this material dispute, this factor may not weigh in favor of Defendant's use of force as Defendant contends.

---

[3] In her brief, Defendant does not dispute Plaintiff's "testimony as to the medical examination, treatment and opinions she received following the alleged use of force incident. [Defendant], however, reserves the right to dispute this testimony at trial." Doc. 45-1, p. 3.

[4] The Court notes that Plaintiff's admitted actions of grabbing the broom from Defendant and stating that she would defend herself against Defendant demonstrate that Plaintiff created a threat to the staff and other inmates. Pl's Depo, pp. 67-68, 78. These actions, however, took place after Defendant's initial acts of grabbing, choking, and hitting Plaintiff with a broom. *Id.* at 62-67. Furthermore, although Plaintiff admits grabbing the broom and stating she would defend herself in the future, there is no evidence of any physical contact or violence on Plaintiff's part after taking the broom.

In evaluating the last factor, the extent of Plaintiff's injury, Defendants contend that a reasonable jury would decide that Plaintiff "did not suffer more-than-*de-minimis* injuries [. . . .]" Doc. 45-1, p. 10. Defendant also contends that Plaintiff has failed to produce evidence of her injuries or that she sought treatment or care for her injuries. *Id.* Defendant's contention is not accurate. Although there are no medical records before the Court, Plaintiff testified that she had redness, swelling, pain, and "mild scoliosis of my spine from the situation [with Defendant,]" and that she "never had mild scoliosis before [the incident]." Pl's Depo, pp. 86, 87-88, 92-93, 96, 98. To the extent that Defendant contends Plaintiff's testimony is simply not accurate, there is a conflict with the evidence before the Court which must be resolved in favor of the Plaintiff at this stage. Moreover, even if Plaintiff's alleged injuries were not serious as Defendant contends, "the focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted." *Stallworth v. Tyson*, 578 F. App'x 948, 953 (11th Cir. 2014)*; see Wilkins v. Gaddy,* 559 U.S. 34, 37–39, (2010); *Couch,* 2016 WL 2991094, at *5. Accordingly, Defendant has failed to demonstrate that there are no genuine issues of fact regarding the subjective component of an excessive force claim.

Defendant further contends that Plaintiff fails on the objective element of her excessive force claim because Defendant's alleged use of force was not objectively harmful. Doc. 45-1, p. 10. Although the Eighth Amendment generally excludes *de minimis* uses of physical force, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38, (2010).

In the case at hand, there are several genuine issues of material fact regarding the alleged force. First, as discussed above, the underlying issue in this case is whether Defendant grabbed,

choked, and hit Plaintiff three times with a broom stick. A reasonable jury could find that Defendant's actions, especially the action of returning to the scene with a broom stick, then proceeding to hit Plaintiff three times, is objectively harmful. Second, assuming force was used, there is a genuine issue of material fact regarding the whether an injury occurred. Defendant argues in her brief that there is no dispute that Plaintiff did not sustain a more-than-*de-minmis*. A reasonable jury, however, could find that "mild scoliosis" is an objectively harmful injury. Although there no evidence in the record of the x-rays or MRIs that Plaintiff testified about in her deposition (Pl's Depo. At 96-98), Plaintiff's deposition testimony creates a genuine issue of material fact. It is not the role of the Court on motion for summary judgment to make a credibility determination as to Plaintiff's testimony. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bowden v. Stokely*, 576 F. App'x 951, 954 (11th Cir. 2014). Accordingly, Defendant has not demonstrated she is entitled to summary judgment on the objective component of the Eighth Amendment analysis.

In summary, there are genuine issues of material fact, most importantly as to whether Defendant used any force at all against Plaintiff. Defendant also contends that Plaintiff's allegations do not constitute a constitutional violation. The evidence is sufficient to create genuine issues of material facts that may lead a reasonable jury to find for the Plaintiff. Any evidence of efforts made by Defendant to temper the severity of the force after the fact could be construed to support Plaintiff's testimony that a use of force did occur. Additionally, a reasonable jury could find that Plaintiff sustained some injury and conclude that Defendant's use of force was conducted maliciously and sadistically to cause harm.

Because the Court cannot make credibility determinations on summary judgment, the Court cannot resolve the underlying dispute when Plaintiff's personal observations are "not

blatantly contradicted by other evidence in the record." *Bowden*, 576 F. App'x 951, 954 (11th Cir. 2014); s*ee Miller v. Harget,* 458 F.3d 1251, 1256 (11th Cir.2006) ("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Accordingly, Defendant has not met her burden that she is entitled to summary judgment.

B. **Qualified Immunity**

Regarding Plaintiff's claims against Defendant in her individual capacity, Defendant is not entitled to qualified immunity. Qualified immunity protects government officials from personal liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). Qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Melton*, 841 F.3d at 1220–21(quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003)).

To be entitled to qualified immunity, a public official must first establish that she was acting within his discretionary authority. *Caldwell*, 748 F.3d at 1099; *Terrell v. Smith,* 668 F.3d 1244, 1250 (11th Cir. 2012). Once the public official has met this burden, the plaintiff must meet a two-part test: "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Caldwell,* 748 F.3d at 1099; *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). A plaintiff must demonstrate both elements to overcome qualified immunity, and these elements may be conducted in any order. *Melton*, 841 F.3d at

1221; *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010); *Pearson*, 555 U.S. at 236 ("while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). In Eighth Amendment excessive force claims, courts have held that "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Bowden*, 576 F. App'x 954–55 (quoting *Johnson v. Breeden,* 280 F.3d 1308, 1321–22 (11th Cir.2002)).

Here, it is undisputed that Defendant was acting within her discretionary authority as a public official. *Caldwell*, 748 F.3d at 1099; *Terrell v. Smith,* 668 F.3d 1244, 1250 (11th Cir. 2012). Because there are disputed material issues that could lead a reasonable jury to find that Defendant violated Plaintiff's Eighth Amendment rights, Defendant is not entitled to qualified immunity. As Plaintiff has sufficiently established genuine issues of material fact as to her excessive force claim, "there is no room for qualified immunity." *Johnson*, 280 F.3d at 1321.

**C. Compensatory Damages**

Pursuant to § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Although section 1997e(e) does not define what constitutes a physical injury, the Eleventh Circuit has concluded that in order to satisfy the statute "the physical injury must be more than *de minimis*, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated in part on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc); *see also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–1313 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury

13

must be accompanied by allegations of physical injuries that are greater than *de minimis*.") (citation omitted). Thus, in the Eleventh Circuit, it is clear that a prisoner must establish more than a *de minimis* physical injury to recover compensatory and punitive damages for any mental or emotional injury suffered. *See Mitchell*, 294 F.3d at 1312–13 (§ 1997e(e) requires showing of more than *de minimis* physical injury in order for plaintiff to proceed on claim for mental or emotional injury).

Plaintiff testified that she suffered from redness, swelling, neck and side pain, and a mild case of scoliosis. Viewing this testimony in light most favorable to Plaintiff, Plaintiff has presented evidence that could possibly cause a reasonable jury to find that her physical injuries were more than *de minimis*. Accordingly, Plaintiff's claim for damages is not barred by § 1997e(e).

## CONCLUSION

Defendant has failed to demonstrate that she is entitled to summary judgment. There are underlying genuine issues of material fact as to whether the alleged use of force incident occurred. Evaluated in a favorable light, Plaintiff's testimony and other evidence could lead a reasonable jury to decide that Defendant's actions of grabbing, choking, and hitting Plaintiff with a broom stick were done maliciously and sadistically. Because Defendant's actions could be found to violate clearly established law regarding excessive force claims, Defendant is not entitled to qualified immunity. Additionally, the PLRA does not bar Plaintiff's request for compensatory damages, as a reasonable jury could find that Plaintiff's injuries were more than *de minimis*. Accordingly, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 45) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this

14

Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 2nd day of November, 2017.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge